# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* SIMPSON UNLIMITED, INC., | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Case No. SAG-19-1400 |
| THE WHITING-TURNER CONTRACTING CO., *et al.*, | * * * | |
| Defendants. | * * | |

## MEMORANDUM OPINION

The United States of America, for the use and benefit of Simpson Unlimited, Inc., ("Simpson") has sued Defendants Fidelity and Deposit Company of Maryland, Zurich American Insurance Company, and Liberty Mutual Insurance Company (collectively "the Sureties"), and The Whiting-Turner Contracting Company ("Whiting-Turner") for claims arising out of a construction subcontract. ECF 1. Defendants have filed a Joint Motion to Stay Proceedings, citing an arbitration hearing scheduled on October 21-22, 2019. ECF 28. Simpson opposed the motion to stay, ECF 31, and Defendants filed a reply, ECF 34. No hearing is necessary. *See* Local R. 105.6 (D. Md. 2018). For the reasons that follow, I will grant Defendants' motion to stay.

As alleged in Simpson's Complaint, ECF 1, Simpson and Whiting-Turner entered into a subcontract in May, 2017, ("the Subcontract"), relating to an existing contract between Whiting-Turner, as prime contractor, and the U.S. Army Corps of Engineers for improvements at the Walter Reed Army Institute of Research ("the Project"). ECF 1 ¶¶ 9, 11. The Sureties, with Whiting-Turner, delivered to the United States a bond to protect persons supplying labor and materials on the Project. ECF 1 ¶ 10. The Subcontract required Simpson to provide materials and labor for certain roofing, sheet metal, and waterproofing work at the Project, in exchange for monetary

payment. ECF 1 ¶ 11. Simpson alleges that it was asked to perform labor and provide materials beyond the plans and specifications of the Subcontract, and contends that it is owed $290,436.56 for those additional materials and labor. ECF 1 ¶¶ 12, 13. Simpson's performance under the Subcontract concluded on or about November 16, 2018. ECF 1 ¶ 15.

A dispute arose between Simpson and Whiting-Turner regarding whether Simpson was entitled to the additional payment. *See* ECF 1 ¶¶ 13, 14. With respect to dispute resolution, the Subcontract provides:

> If requested by Contractor, Subcontractor agrees to submit any dispute under this Subcontract to arbitration under the Construction Industry Rules of the American Arbitration Association, or pursuant to any Arbitration procedure and rules governing the General Contract, if any.

ECF 1-4 at 8 ¶ 9(r). On March 29, 2019, Whiting-Turner initiated arbitration proceedings to address the parties' dispute with the American Arbitration Association (AAA). ECF 28-2 at 1. Simpson filed its counterclaim against Whiting-Turner with the AAA on April 17, 2019. ECF 28-3. On May 13, 2019, Simpson filed the instant Complaint in this Court, seeking to recover the same sums against the Sureties, under the bond, and also asserting its claims against Whiting-Turner. ECF 1. In the meantime, in the AAA proceeding, the parties agreed, with the appointed arbitrator, to an expedited schedule including a hearing to be held on October 21, and 22, 2019, with post-hearing submissions to be handled on an agreed schedule. ECF 28-5.

Defendants now seek a stay of the case in this Court pending resolution of Simpson's claims in arbitration. Pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

Even where certain issues pending before the Court are not "issue[s] referable to arbitration," the Court retains discretionary power to stay the litigation. *See American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996) ("[T]he decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket.") (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983); *Summer Rain v. Donning Co./Publishers, Inc.,* 964 F.2d 1455, 1461 (4th Cir. 1992)). The Court is required to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25.

Simpson agrees that its claims against Whiting-Turner are arbitrable, and does not object to a stay of those claims pending the arbitration. ECF 28-1 at 4. However, Simpson contests the stay as to its claims against the Sureties in Count I of the Complaint, "because the Sureties are not a party to the arbitration pending between Whiting-Turner and Simpson." ECF 31-1 at 3. In support of its position, Simpson cites *U.S. ex rel. Tusco, Inc. v. Clark Construction Grp., LLC*, 235 F. Supp. 3d 745 (D. Md. 2016). In *Tusco,* a subcontractor sued a surety under a payment bond. *Id.* at 749-50. The surety argued that the case should be stayed, because the property owner first had to review the general contractor's claim, and those parties had to resolve their dispute pursuant to the alternative dispute resolution mechanisms required by the prime contract. *Id.* at 757-59. The subcontractor in *Tusco* was not a party to the dispute between the property owner and the general contractor, and had been waiting, at the time of the opinion, almost two years to be paid for its change order work. *Id.* at 760. The *Tusco* Court relied on *United States v. Zurich Am. Ins. Co.*, 99 F. Supp. 3d 543, 550 (E.D. Pa. 2015), another case in which a subcontractor was asked to wait for resolution of a dispute between the prime contractor and the property owner before receiving payment. *Tusco,* 235 F. Supp. 3d at 758-59. The *Tusco* Court noted that, in *Zurich*,

3

"The court concluded that 'a stay would subject [the subcontractor] to a substantial, indefinite delay as [the prime contractor's] claim passes through the administrative process . . . only to be left at the end of that process to begin again here to litigate its rights against [the prime contractor].'" *Id.* at 759 (quoting *Zurich*, 99 F. Supp. 3d at 551). Essentially, *Tusco* and *Zurich* addressed situations where the general contractor tried to enforce a "pay-when-paid" provision, not, as here, a situation where the general contractor substantively disputes its liability to the subcontractor and has an express arbitration clause in the Subcontract.

Simpson's argument rests on the purpose of the Miller Act, which affords subcontractors a right to sue under a security bond, rather than to await payment by the owner to the prime contractor. ECF 31-1 at 3-6. In other words, the Miller Act intended to alleviate the burden on subcontractors from delay in the adjudication of payment disputes. *See United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957). While the Miller Act might generally provide expedited financial relief to a subcontractor, the arbitration schedule in this case is such that, without question, the arbitrator can reach a decision on the merits of Simpson's claim before this Court could do so. If this Court were to deny the stay, the Sureties would be afforded time to file their answers, after which a discovery schedule would be set. A standard discovery schedule would include deadlines well past October, 2019, the date of the arbitration hearing. Accordingly, this case stands in stark contrast to cases in which a subcontractor is asked to wait indefinitely for administrative proceedings to conclude. Here, the arbitration proceedings have a fixed, aggressive schedule which will result in a faster outcome than that available in court.

Finally, the Sureties have represented to this Court that they will accept the findings of the arbitrator as binding. ECF 34 at 2. Thus, while the Sureties are not formal parties to the AAA

proceeding, that proceeding will be dispositive as to the entire matter, and Simpson will not be subject to further delay or further litigation.

Accordingly, even assuming *arguendo* that Simpson's claims against the Sureties are not "issue[s] referable to arbitration," this Court will grant a discretionary stay, in light of the advanced procedural posture of the arbitration, the fixed hearing date, and the Sureties' agreement to be bound by the results. After weighing the competing interests presented, considerations of judicial economy, efficient use of the parties' time, effort, and resources, and the lack of prejudice to the non-moving party all weigh in favor of a stay of these proceedings. *See Elite Constr. Team, Inc. v. Wal-Mart Stores, Inc.*, Civil No. JKB-14-2358, 2015 WL 925927, at *3 (D. Md. Mar. 2, 2015) (listing considerations for a discretionary stay).

For the reasons set forth above, Defendants' Motion to Stay Proceedings, ECF 28, is GRANTED. Defendants are ordered to file a status report on or before October 25, 2019, to provide this Court with the schedule for post-hearing briefing in the arbitration.

A separate Order is filed herewith.

Dated: July 18, 2019

/s/
Stephanie A. Gallagher
United States Magistrate Judge